# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **GEORGE W. PARSLEY, JR. AND** | § | |
| **LYNN GIBSON WRIGHT** | § | |
| | § | |
| **VS.** | § | **C.A. NO. _____** |
| | § | |
| **LUMBER LIQUIDATORS, INC.** | § | |

---

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

---

## <u>INTRODUCTION</u>

1.      Defendant Lumber Liquidators, Inc. has been selling composite laminate flooring products that emit formaldehyde at levels known to pose serious health risks.  The formaldehyde emissions from certain Lumber Liquidators products far exceed the maximums allowed by the California Air Resources Board ("CARB"), which Lumber Liquidators guarantees that said products meet. For nearly two years, and possibly longer, Lumber Liquidators has known that flooring products it has manufactured in China that is intended to be used in people's homes emit unsafe levels of formaldehyde. Nonetheless, Lumber Liquidators has continued to specifically and falsely label these products as being as being compliant with all CARB formaldehyde standards and to falsely state on its website and elsewhere that its products "meet the highest quality and environmental standards." As a result, Texas consumers have been buying flooring products from Defendant that are unsafe and should not be distributed or sold in Texas.

2.      Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin. The base layer is covered with a veneer or other material such as a photographic image of wood, affixed as a decorative surface.

3.      Formaldehyde is a common ingredient Formaldehyde is a common ingredient in the glue used in the laminate flooring base layer. If used in low levels, the formaldehyde will quickly dissipate during installation. However, if used in higher levels the formaldehyde is released as a gas that emanates from the flooring over time. Long term exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia. Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain and nausea. It has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a particular acute risk to children.

4.      Lumber Liquidators supervises and controls the manufacturing of composite laminate wood flooring products in several mills in China. Lumber Liquidators also packages, distributes, markets and/or sells laminate wood flooring products that have been manufactured in China to consumers in California.

5.      From October 2013 through November 2014, three accredited laboratories tested the formaldehyde emissions of laminate wood flooring from several nationwide retail outlets, including Home Depot, Lowe's, and Lumber Liquidators. Of the dozens of products tested, by far the highest formaldehyde levels were found in the laminate wood flooring sold by Lumber Liquidators that was produced in China. Similar products manufactured in North America generally had much lower formaldehyde levels that complied with the formaldehyde emission standards promulgated by CARB. Similar products tested from Lumber Liquidators' competitors also showed significantly lower formaldehyde levels that generally complied with the CARB formaldehyde emission standards. The list of products that have been tested and found to exceed the CARB limit for formaldehyde emissions is set forth in paragraph 23 below.

6.      Despite this discrepancy, Lumber Liquidators did not differentiate between its domestically manufactured floor laminates and those made in China. Defendant's labels on its Chinese laminate wood flooring products state that the products comply with strict formaldehyde emission standards promulgated by CARB by stating "California 93120 Phase 2 Compliant Formaldehyde."

7.      In 2014 and early 2015, 60 Minutes news conducted an independent investigation into Lumber Liquidators' Chinese-made flooring products. Investigators purchased 31 boxes of various Chinese-made flooring products from various Lumber Liquidators stores around the country and sent the sample for testing at two certified labs. Of the 31 samples, only one was compliant with CARB formaldehyde emissions standards. "Some were more than 13 times over the California limit.[1]

8.      60 Minutes also sent undercover investigators to three different mills in China that manufacture laminates and flooring on behalf of Lumber Liquidators. 60 Minutes reported that:

> Employees at the mills openly admitted that they used core boards with higher levels of formaldehyde to make Lumber Liquidators laminates, saving the company 10-15 percent on the price. At all three mills they also admitted [to] falsely labeling the company's laminate flooring as CARB compliant.  [2]

9.      Lumber Liquidators does not give consumers any warnings about unlawful formaldehyde levels in its laminate wood flooring products. Instead, along with its product labels, it represents on its website and its warranties that it's flooring products comply with strict formaldehyde standards. Lumber Liquidators has made false and misleading statements that its flooring products comply with CARB formaldehyde standards, and the even more stringent

---

[1] *Lumber Liquidators Linked to Health and Safety Violations,* 60 Minutes (Mar. 1, 2015), available at http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited March 4, 2015).
[2] *Id.*

European formaldehyde standards. Lumber Liquidators' website falsely states, "we not only comply with laws-we exceed them."  "Highest Quality Flooring. GUARANTEED."[3]

10.     Lumber Liquidators has continually sold these products to Texas customers at retail outlets or through its website, www.lumberliquidators.com, and using its toll free customer service telephone line.

11.     Plaintiffs purchased and installed a Lumber Liquidators product that was manufactured in China, labeled as being CARB compliant, and that was of a type found to have formaldehyde levels that exceed CARB limits.  Plaintiffs seek to represent themselves and similarly situated persons in Texas who have purchased Defendant's laminate wood flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in Texas at any time from March 5, 2011, through the date of judgment herein ("the putative class"). Plaintiff seeks restitution of monies they spent on purchasing and installing the flooring products and for removing the flooring as well as for injunctive relief to enjoin the unlawful and unfair business practices.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of a State different from the Defendants.

13.     This Court has personal jurisdiction over the parties in this action by the fact that Defendants are corporations that are licensed to do business in the state of Texas or otherwise conduct business in the state of Texas.

---

[3] http://www.lumberliquidators.com/11/flooring/quality?WT.ad-GLOBAL FOOTER Quality (last visited on March 2, 2015, Page unavailable as of March 4, 2015).

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) inasmuch as the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and one of the named Plaintiffs/Class Representatives resides in this district.

**PARTIES**

15.     George W. Parsley, Jr. is a resident of Beaumont, Jefferson County, Texas.

16.     Lynn Gibson Wright is a resident of Houston, Harris County, Texas.

17.     Defendant Lumber Liquidators Inc. is a Delaware corporation with its headquarters and principal place of business in Toano, Virginia.  Lumber Liquidators, Inc. distributes, markets, and/or sells laminate wood flooring products in Texas.  Lumber Liquidators, Inc. sells goods within the meaning of the Texas Deceptive Practices Act.

**FACTUAL ALLEGATIONS**

**California's Formaldehyde Standards**

18.     In 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

19.     In 1992, the CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

20.     The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.  The formaldehyde emission standards became effective January 2009 and set decreasing limits in two Phases.  Cal. Code Regs., tit. 17, § 93120.2(a).

21.     The CARB Regulations apply to composite wood ("laminate") products including flooring.  Cal Code Regs., tit. 17, § 93120.2(a).

22.     The CARB Phase 1 Emission Standard for MDF in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm"). The Phase 2 Emission Standard for MDF dictates that as of January 1, 2011, MDF flooring products such as those involved in this action must emit no more than 0.11 parts per million ("ppm") of formaldehyde. The CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009 to December 31, 2011, limited formaldehyde emissions to 0.21 ppm. The CARB Phase 2 Emission Standard for Thin MDF dictates that as of January 1, 2012, thin MDF flooring products such as those involved in this action must emit no more than 0.13 ppm of formaldehyde. Cal. Code Regs., fit. 17, § 93120.2(a). (Hereinafter, the formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit.").

**Lumber Liquidators' Laminate Wood Flooring Products**

23.     Defendant supervises and/or controls the manufacturing and packaging of laminate wood flooring products in China that Defendant then distributes, markets, and/or sells in California. Those laminate wood flooring products contain formaldehyde and emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit. Those laminate wood flooring products, at a minimum, include the following:

    a.  8 mm Bristol County Cherry Laminate Flooring

    b.  8 mm Dream Home Nirvana French Oak Laminate Flooring

    c.  8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring

    d.  12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring

    e.  12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring

    f.  12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring

    g.  12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring

h.   12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring

i.   12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring

j.   12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring

k.   12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring

l.   12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601)

m.   12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958)

n.   12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring

o.   12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring

p.   12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring

q.   12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring

r.   12 mm Dream Home St. James African Mahogany Laminate Flooring

s.   12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring

t.   12 mm Dream Home St. James Brazilian Koa Laminate Flooring

u.   12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring

v.   12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring

w.   12 mm Dream Home St. James Golden Acacia Laminate Flooring

x.   12 mm Dream Home St. James Nantucket Beech Laminate Flooring

y.   12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring

z.   12 mm Dream Home St. James Vintner's Reserve Laminate Flooring

aa.   15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring

24.     CARB regulations apply to all of the above listed flooring products.

25.     On information and belief, each of the Lumber Liquidators' laminate wood flooring products listed in paragraph 23 above are manufactured in China using a common formula, design or process.

26.     On information and belief, each of the Lumber Liquidators' laminate wood flooring products listed in paragraph 23 above emit formaldehyde gas at levels that exceed the CARB limits in place at the time.

**Lumber Liquidators Misrepresents that its Laminate Wood Flooring Products Meet California Emissions Standards**

27.     Despite unlawful levels of formaldehyde emissions from its laminate wood flooring products, Defendant misrepresents to consumers on their website, product packaging and warranties that their laminate wood flooring products meet the CARB standards for formaldehyde emissions.

28.     Lumber Liquidators' website leads consumers to believe that the company's laminate wood flooring products comply with the CARB formaldehyde standards when they do not.  The website states as follows:

Is Lumber Liquidators Compliant with the California law?

**Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.**  The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.  [Emphasis in original]

> Does CARB only apply to California?
>
> Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country.  [Emphasis in original]
>
> What extra steps does Lumber Liquidators take to ensure compliance?
>
> In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for an independent third-party lab testing.**  This is done as a monitoring activity to validate ongoing quality control.  [Emphasis in original.][4]

29.    After the dangerous formaldehyde levels in Lumber Liquidators' products was featured on the news program "60 Minutes," Lumber Liquidator responded by posting a letter from its Chairman on its website stating:

> Let me make one thing very clear – our laminate products, all of our products, are 100% safe.
>
> …
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing compliance personnel around the world and utilizing the latest in cutting-edge technology to provide our customers with top quality and high value flooring.[5]

30.    In addition, the product packaging for Lumber Liquidators' laminate wood flooring states:  "CARB…CALIFORNIA 93120 Phase 2 Compliant Formaldehyde."  On information and

---

[4]http://www.lumberliquidators.com/11/flooring/ca-air-resources-board-regulations?Wt.ad-GLOBAL_FOOTER_CaliRegCARB  (last visited on March 4, 2015).
[5] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited March 4, 2015)

belief, this statement is presented on all Lumber Liquidators' laminate flooring product packaging regardless of whether the flooring inside the packaging complies with the CARB standards.

31.    Lumber Liquidators' purchase orders come with a warranty stating that the customer's purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all warnings, labels, and markings required by applicable laws and regulations."

32.    Instead of warning consumers about formaldehyde emissions from its laminate wood flooring products, Lumber Liquidators' website states that it has Third Party Certifiers approve its flooring products to meet CARB standards.

Regulations and Lumber Liquidators' Compliance

The California Air Reform Bill (CARB) requires that products containing Hardwood Plywood Veneer Core (HWP-VC), Hardwood Plywood Composite Core (HWPCC), Particleboard and MDF be tested for emissions and products not meeting the strict standards for emissions may not be sold in California.

The Environmental Protection Agency has drafted national standards for formaldehyde emissions in composite wood products that are similar to those of California. Those standards have not yet been enacted.  All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB - and that their products conform to the specified formaldehyde emission limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified. Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to sell the products in California or any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard which has stricter guidelines than the California. In addition to the CARB requirements, Lumber Liquidators regularly selects one or more products from each of its suppliers and submits them for independent third-party lab testing. This is done as a monitoring activity to validate ongoing compliance.[6]

---

[6] http://www.lumberliquidators.com/ll/flooring/Flooring101?Wt.ad=RIGHTNAV_Flooring101 (last visited March 4, 2015)

33. Lumber Liquidators materially misrepresents the safety of its laminate wood flooring products by advertising and representing that its flooring products are compliant with the CARB limit when in fact they are not.

34. Lumber Liquidators makes the material omission of failing to tell consumers that they are buying laminate wood flooring products with unlawfully high levels of formaldehyde.

35. These laminate wood flooring products have been sold by Defendant for use in California for more than four years.

36. Defendant continues to distribute and sell its laminate wood flooring products to customers in California with the representation that they are CARB compliant, even though they are not.

**Lumber Liquidators Knew that its Representations of California-Compliant Formaldehyde Levels in its Laminate Wood Flooring was False**

37. On information and belief, at all times relevant to this action, Lumber Liquidators has knowingly misrepresented its laminate wood flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its laminate wood flooring products.

38. At the same time he same time that Defendant made public statements to consumers that the laminate wood products it sells are sourced from mills whose production methods are CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and the measures Lumber Liquidators takes to ensure full compliance by its suppliers, Defendant acknowledged the opposite to the SEC, stating, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, **we do not control our suppliers**. Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner

Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner, could . . . expose us to legal risks as a result of our purchase of product from non-compliant suppliers."[7]

39.     Despite its stated concern that its suppliers might not comply with environmental regulations, Defendant has failed to sufficiently exercise- its quality control over those suppliers to ensure that they comply with CARB standards, and Defendant continues to sell to California consumers laminate wood flooring  products that Defendant obtains from those suppliers.

40.     On June 20, 2013, the news website *Seeking Alpha* published a lengthy article based on a letter to the California Ari Resources Board. The letter and article documented high formaldehyde levels in Chinese-made laminate flooring sold by Lumber Liquidators., as shown by tests a certified laboratory conducted on three samples of Chinese-made laminate flooring sold by Lumber Liquidators. Enclosed with the letter were the actual test results showing that the tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and half times the maximum formaldehyde emission level.  Nonetheless, the letter notes that Lumber Liquidators labeled the product as being CARB compliant.

41.     On information and belief, high formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins. By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' Chinese manufacturers are able to produce laminate wood flooring more

---

[7] Lumber Liquidators February 25, 2014 10-K at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127 (emphasis added). In the same filing, Lumber Liquidators acknowledges that it oversees quality control in its Chinese mills: "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures." *Id.* at p. 5.

quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

42.     On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's laminate wood flooring products. *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, No. 4:2013-cv-00157 (E.D. Va). This case is currently pending. Lumber Liquidators was made aware during the pendency of this and other lawsuits of complaints and allegations that its laminate wood flooring products from China emit formaldehyde gas at levels that violate the CARB limit.

43.     Numerous Lumber Liquidators customers have posted internet complaints on Defendant's website concerning formaldehyde emissions, including Deborah of  North Fork, California who posted on the Consumer Affairs website on September 11, 2014:

> We spent thousands of dollars and went with the LL recommended professional installer... the product we were sold was supposedly Made in the USA--nope, China. One of my children cannot walk barefoot on the floor because he will blister from the formaldehyde content. We saved for years for this floor, it will need to be replaced. Please RUN to another dealer. This company does not care about the customer one bit. This has been a devastating blow to our family.[8]

44.     Based on lawsuits, articles, and blog posts, Defendant knew or should have known that its laminate wood flooring products were not compliant with CARB standards. Despite this knowledge, Defendant failed to reformulate its flooring products so that they are CARB compliant or to disclose to consumers that these products emit unlawful levels of formaldehyde. Instead, Defendant has sold and continues to sell laminate wood flooring products in California that exceed

---

[8] http://www.Consumeraffairs.com/homeowners/lumber liquidators.html  December 2, 2014.

the CARB limit while continually representing to consumers that those products are CARB compliant.

45.     In light of the false representations Lumber Liquidators has made regarding formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs and members of the class would reasonably fear for their safety by allowing the laminate  flooring to remain in their homes.  It would therefore be reasonably prudent to incur the  cost of replacing the laminate flooring rather than continue to incur the risks posed by the laminate flooring that may contain high levels of formaldehyde.

**FACTS RELATING TO NAMED PLAINTIFFS**

**George W. Parsley, Jr.**

46.     In March, 2011, Plaintiff George Parsley purchased approximately 900 feet of St. James Dream Home Laminate Flooring (SKU 10009812) at the Lumber Liquidators store located at 4395 W. Cardinal Drive, Beaumont, Texas.  On information and belief, the flooring was produced at the laminate mill in China.  The box indicates it was manufactured in China.

47.     Mr. Parsley purchased the laminate flooring for the purpose of installing it in his second home in Crystal Beach, Texas, although he resides in Jefferson County, Texas.

48.     At the time he purchased the laminate flooring from the Lumber Liquidators retail store, Mr. Parsley specifically noted the label stating that the product was "California … Compliant for Formaldehyde."  The purchase occurred in Beaumont, Jefferson County, Texas – the Eastern District of Texas.

49.     Mr. Parsley relied on the representations that the laminate flooring he was purchasing was safe and he would not have purchased if she thought it was unsafe.

50.     At the time that Plaintiff purchased this laminate wood flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

51.     At the time of the purchase, Lumber Liquidators also failed to inform Mr. Parsley that the laminate wood flooring product he purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to the State of California to cause cancer.

52.     In March, 2015, Mr. Parsley learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product may have been false.  In light of the risks to their health, Mr. Parsley intends to have his flooring replaced.

53.     Had the Lumber Liquidators' laminate wood flooring been CARB compliant, Mr. Parsley would have been satisfied with his purchase.

**Lynn Gibson Wright**

54.     In July, 2014, Plaintiff Lynn Gibson Wright purchased approximately 300 feet of 12 mm ISP Poplar Forest Oak Laminate Flooring (SKU 10024376) at Lumber Liquidators store located at 5829 W. Sam Houston Parkway, Houston, Texas.  On information and belief, the flooring was produced at the laminate mill in China.

55.     Ms. Wright purchased the laminate flooring for the purpose of installing it in her home in Houston, Texas.

56.     At the time she purchased the laminate flooring from the Lumber Liquidators retail store, Ms. Wright specifically noted the label stating that the product was "California … Phase 2 Compliant for Formaldehyde."

57.     Ms. Wright relied on the representations that the laminate flooring she was purchasing was safe and she would not have purchased if she thought it was unsafe.

58.     At the time that Plaintiff purchased this laminate wood flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

59.     At the time of the purchase, Lumber Liquidators also failed to inform Ms. Wright that the laminate wood flooring product she purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to the State of California to cause cancer.

60.     In March, 2015, Ms. Wright learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product may have been false.  In light of the risks to their health, Ms. Wright intends to have her flooring replaced.

61.     Had the Lumber Liquidators' laminate wood flooring been CARB compliant, Ms. Wright would have been satisfied with her purchase.

## CLASS ACTION ALLEGATIONS

62. Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

63.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Class consisting of:

> All persons who, from March 6, 2011, to the present, purchased from Defendant in Texas one or more laminate wood flooring products that were for their personal use rather than for resale or distribution, that were manufactured in China, and that were advertised as being CARB compliant.

64.     Plaintiffs do not know the exact size or identities of the members of the proposed class, since such information is in the exclusive control of Defendant.   Plaintiffs believe that the Class

encompasses many hundreds and perhaps thousands of  individuals whose identities can be readily

ascertained from Defendant's books and  records.  Therefore, the proposed Class is so numerous that

joinder of all members is impracticable.

65.    Based on the size of the modifications at issue, Plaintiffs believe the amount in

controversy exceeds $5 million.

66.    All members of the Class have been subject to and affected by the same  conduct.  All

purchased laminate wood flooring products from the Defendant that were falsely advertised as being

known to be compliant with CARB standards for formaldehyde and were therefore safe to install in

homes or businesses.  Instead, the levels of formaldehyde in the flooring products were, at a minimum,

unknown and in  many cases emitting unlawful levels of formaldehyde.  The lack of monitoring to

ensure  CARB compliance and the resulting lack of CARB compliance was not disclosed to any  class

members.   There are questions of law and fact that are common to the class, and  predominate over

any questions affecting only individual members of the Class.  These  questions include, but are not

limited to the following:

a.   Whether Lumber Liquidators properly and adequately monitored their Chinese manufacturing plants to ensure CARB compliance;

b.   Whether Lumber Liquidators' laminate wood flooring products that were manufactured I n China and sold in California exceed the CARB limit;

c.   Whether Lumber Liquidators falsely labeled and advertised its Chinese manufactured laminate wood flooring products as being CARB compliant;

d.   Whether any false representations regarding CARB compliance were made knowingly and willfully;

e.   Whether Lumber Liquidators concealed and omitted material facts from its communications with and disclosure to all class members regarding the levels of formaldehyde in its laminate wood flooring products;

f.   Whether Lumber Liquidators breached express warranties to class members regarding its laminate wood flooring products pursuant to Texas law;

g.   Whether Lumber Liquidators' misrepresentations or omissions constitute unfair or deceptive practices under the California Deceptive Trade Practices Act ("DTPA");

h.   Whether Lumber Liquidators' conduct entitles class members to injunctive relief;

i.   Whether the above practices caused Class members to suffer injury; and

j.   The proper measure of damages and the appropriate injunctive relief.

67.     The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

68.     The individual named Plaintiffs will fairly and adequately represent the interests of the Class.  They are committed to the vigorous prosecution of the Class's claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

69.     A class action is superior to other methods for the fast and efficient adjudication of this controversy. Each Class Member is entitled to restitution of the price of the laminate wood flooring product, and the cost of installation and removal of the unlawfully sold flooring products. The damages suffered by individual Class Members are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against Defendant to recover damages stemming from Defendant's unfair and unlawful practices.

70.     This putative class action meets the requirements of Fed. R. Civ. P. 23(b) (2) and Fed. R. Civ. P. 23(b) (3).

## CAUSES OF ACTION

## Count 1 – Breach of Express Warranty; Texas Business and Commercial Code §2.313

71.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

72.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

73.     As an express warrantor and manufacturer and merchant, Lumber Liquidators' had certain obligations under Texas Bus. Comm. Code §2.313 to conform its products to the express warranties.

74.     When Plaintiffs and the members of the Class purchased their Lumber Liquidators' flooring, Lumber Liquidators expressly warranted that it was compliant with California 93120 Phase 1 or 2 for Formaldehyde.

75.     The defects at issue in this litigation were present at the time of the sale to Plaintiffs and members of the Class.

76.     Lumber Liquidators breached its express warranties as it knew that the flooring was not compliant with California 93120 Phase 2 Regulations and/or Phase 1 Regulations.

77.     Pursuant to the express warranties, Lumber Liquidators is obligated to pay for or reimburse Plaintiffs for costs incurred in purchasing and replacing said flooring.

78.     Lumber Liquidators has received timely notice regarding the problems at issue in this litigation (indeed Lumber Liquidators knew of the defects prior to offering the products for sale) and, notwithstanding such notice, Lumber Liquidators has failed and refused to offer an effective remedy.

79.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Lumber Liquidators to limit its express warranties in a manner that would exclude or limit coverage for the defective flooring and related damages which Lumber Liquidators knew about prior to offering the products for sale is unconscionable and any such effort to disclaim or otherwise limit liability for the defects at issue is null and void.

80.     In reliance upon said express warranties, Plaintiffs and class members purchased said flooring products from Lumber Liquidators.

81.     Plaintiffs and members of the Class are in privity with Lumber Liquidators as Lumber Liquidators directly markets to consumers and maintains a direct relationship with purchasers.

82.     Accordingly, Plaintiffs and the Class suffered damages caused by Lumber Liquidators' breach of the express warranties and are entitled to recover damages.

## Count 2 – Breach of Implied Warranty of Merchantability – Texas Business and Commercial Code §2.314.

83.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

84.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

85.     Lumber Liquidators is and was at all relevant times a merchant with respect to the covered flooring products.

86.     A warranty that the flooring products were in merchantable quality and condition is implied by law pursuant to Texas Bus. & Com. Code §2.314.

87.     Lumber Liquidators impliedly warranted that the flooring products were of good and merchantable condition and quality – fit and safe for their ordinary intended use.

88.     The covered flooring products were defective at the time they left the possession of Lumber Liquidators.  These defects include the formaldehyde emission higher than the California 93120 Phase 2 Regulation.  Lumber Liquidators knew of these defects at the time these transactions occurred.  Thus, the flooring products when sold and at all times thereafter, were not in merchantable condition or quality and are not fit for their ordinary intended purpose.

89.     By virtue of the conduct described herein and throughout this Complaint, Lumber Liquidators breached the implied warranty of merchantability.

90.     Plaintiffs and the Class members have been damaged as a direct and proximate result of Lumber Liquidators' breach of the implied warranty.

91.     Plaintiff has performed each and every duty required under the terms of the warranties by operation of law in light of Lumber Liquidators' breach of the implied warranty.

92.     Plaintiff has performed each and every duty required under the terms of the warranties by operation of law in light of Lumber Liquidators' unconscionable conduct.

93.     Lumber Liquidators received timely notice regarding the problems at issue in this litigation (indeed Lumber Liquidators) knew of the defects prior to offering the covered flooring products for sale) and, notwithstanding such notice, Lumber Liquidators has failed and refused to offer an effective remedy.

94.     As a direct and proximate result of Lumber Liquidators breach of warranties, Plaintiffs and the Class were caused to suffer economic damage, including loss of purchase price and the monies to be spent to place the flooring.

**Unjust Enrichment**

95.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

96.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

97.    Lumber Liquidators manufactured and sold the subject flooring described herein.

98.    Lumber Liquidators has had actual knowledge of the defects in the flooring from the beginning of the time when Lumber Liquidators sold the flooring.

99.    Despite Lumber Liquidators knowledge of the defects, Lumber Liquidators has failed to disclose the existence of this defect (a material fact) to Plaintiff and the Class Members at the times each of them purchased their flooring.

100.    By purchasing their flooring for an amount that contemplated a non-defective product, Plaintiffs and Class Members conferred a benefit upon Lumber Liquidators without knowledge of the defect in the flooring.

101.    Lumber Liquidators accepted or retained the benefits conferred by Plaintiffs and Class Members, including payment for a non-defective floor, despite Lumber Liquidators knowledge of the defects in the flooring.

102.    Retaining the non-gratuitous benefits conferred upon Lumber Liquidators by Plaintiff and the Class Members under these circumstances made Lumber Liquidators' retention of the full amount of the payments unjust and inequitable.

103.    Because Lumber Liquidators' retention of the full amount of the non-gratuitous benefits conferred by Plaintiff and Class Members is unjust and inequitable, Lumber Liquidators is liable for the payment of restitution of the benefits it retained.

## DAMAGES

104.    Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

105.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

106.     Plaintiffs would further show that as a result of the acts and/or omissions of Lumber Liquidators, Plaintiff and Class Members have suffered and continue to suffer at least the following damages for which Plaintiff now sues:

    a.  Out of pocket damages for expenditures related to the cost to purchase the defective flooring;

    b.  The cost of installation of the defective flooring;

    c.  The cost to replace and install safe flooring without defects.

## DECLARATORY RELIEF

107.     Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

108.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

109.     Plaintiffs on behalf of themselves and all Class Members contend that Lumber Liquidators' sale of laminate wood flooring products in California do not comply with the CARB standards as warranted.  On information and belief, Lumber Liquidators contends that its sale of laminate wood flooring products in California complies with the CARB standards.

110.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

111.     WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members, seek the following relief against Defendant:

a.   An order certifying this action as a class action under Rule 23 of the Federal
Rules of Civil Procedure, defining the Class as requested herein, and appointing
the undersigned as class counsel;

b.   A finding that Lumber Liquidators breached its express warranties;

c.   A finding that Lumber Liquidators breached its implied warranties;

d.   A finding that Lumber Liquidators was unjustly enriched;

e.   Injunctive Relief prohibiting Lumber Liquidators from continuing to distribute
and/or sell laminate flooring products that violate CARB standards;

f.   Restitution of all money and/or property that Plaintiffs and Class Members
provided to Defendant for the purchase and installation of Defendant's laminate
wood flooring products that were sold that did not comply with CARB
standards;

g.   Damages in an amount to be determined at trial for damages including actual,
compensatory and consequential damages incurred by Plaintiffs and Class
Members;

h.   An award to Plaintiffs and Class Members of reasonable attorneys' fees and
costs; and

i.   An award of such other and further relief as this Court may deem appropriate.

Respectfully submitted,

**WELLER, GREEN, TOUPS & TERRELL, L.L.P.**
Post Office Box 350
Beaumont, Texas 77704-0350
Telephone:  (409) 838-0101
Facsimile:  (409) 832-8577

By:    /s/ Mitchell A. Toups
Mitchell A. Toups
TEXAS BAR NO.  20151600

**ATTORNEYS FOR PLAINTIFFS**